UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY MALISSA M.,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 8:23-cv-00326- KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On February 27, 2023, Plaintiff Kimberly Malissa M. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 2.) Plaintiff filed Plaintiff's Brief ("PB") under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). (Dkt. 10.) Defendant Social Security Administration ("SSA") filed a responding Commissioner's Brief ("CB") under Rule 7. (Dkt. 13.) Plaintiff filed a Reply Brief ("PRB") on July 12, 2023. (Dkt. 17.)

For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.

## BACKGROUND

Plaintiff was born in January 1991. Administrative Record ("AR") 236. In 2012 at age twenty-one, she began working in retail customer service at Macy's. AR 267, 278. She obtained a bachelor's degree in communications from California State University Fullerton in 2016. AR 33, 259. Between 2017 and 2019, she worked part-time as a home health aide. AR 267-68. By 2021, she was working eight hours per week through In-Home Support Services ("IHSS") as a caretaker for her cousin with cerebral palsy. AR 35-36, 40.

On June 10, 2020, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, alleging a disability onset date of January 1, 2014, due to chronic migraines, fibromyalgia, and other conditions. AR 22, 64, 236. On November 29, 2021, an Administrative Law Judge ("ALJ") conducted a telephonic hearing at which Plaintiff, who was represented by counsel, appeared and testified, along with a vocational expert ("VE"). AR 30-45.

On April 14, 2022, the ALJ issued an unfavorable decision. AR 12-29. First, the ALJ determined that Plaintiff's last date insured ("LDI") was June 30, 2015, such that Plaintiff needed to establish disability on or before that date to receive DIB benefits.[1] AR 17. While Plaintiff had worked as a home health aide after her alleged onset date, the ALJ found that this work did not rise to the level of substantial gainful activity. AR 17.

---

[1] DIB Title II benefits provide benefits to insured workers based on their earnings records. Benefits predating their application are potentially available if they establish a disability onset date before their LDI. In contrast, Title XVI SSI benefits are need-based and consider whether claimants were disabled when they applied; no pre-application benefits are available. See Wellington v. Berryhill, 878 F.3d 867, 872.

Next, the ALJ determined that Plaintiff suffered from the severe, medically determinable impairments ("MDIs") of "degenerative disk disease, cervical, thoracic and lumbar spines, status post discectomy and fusion of lumbar spine [in 2012]; chronic migraines; chronic nausea, fibromyalgia; sciatica; [and] urethral syndrome." AR 18. The ALJ found that Plaintiff's mental MDIs of depression and anxiety disorder were not severe, consistent with the opinions of the State agency mental health consultants. AR 18-19.

To determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered Plaintiff's testimony about the limiting effects of her symptoms (AR 20-21) as well as Plaintiff's medical records (AR 21-22). The ALJ also considered opinion evidence from State agency medical consultants C. Scott, M.D., and J. Berry, M.D.. AR 22, citing AR 71, 87. The ALJ found that despite her MDIs, Plaintiff had the RFC to perform light work with some limitations on reaching, pushing, and pulling with her left arm, climbing, and doing postural activities. AR 19-20.

Plaintiff had no past relevant work. AR 22. Based on the RFC findings, the VE's testimony, and other evidence, the ALJ found that Plaintiff could work as a counter attendant, cafeteria worker, or retail marker. AR 23. The ALJ concluded that Plaintiff was not disabled. AR 24.

## III.

## ISSUES PRESENTED

<u>Issue One</u>: Whether the ALJ's RFC findings are supported by substantial evidence. (PB at 2.) Plaintiff contends that the ALJ erroneously concluded that her migraine headaches "are well managed with conservative means" when, in fact, she continued to have debilitating symptoms despite medication. (PB at 5, citing AR 22.) Plaintiff further contends that the ALJ failed to account for "the frequent and disruptive nature of Plaintiff's migraines by including provisions in the RFC for absenteeism, unscheduled breaks, or off-task behavior." (PB at 5.)

3

<u>Issue Two</u>: Whether the ALJ erred by failing to discuss and/or discounting the Third-Party Function Report completed by Plaintiff's boyfriend, Steven Harris, at AR 302-09.  (PB at 2, 6.)

## IV.
## DISCUSSION

**A.   ISSUE ONE: Functional Limitations Caused by Plaintiff's Migraines.**

**1.   Relevant Evidence.**

When asked in 2021 why she was unable to work fulltime, Plaintiff pointed to "chronic nausea, my migraines, my body pain."  AR 36.  She testified that she could not keep her eyes open "for long periods of time if I have a migraine."  AR 36, 310.  Nevertheless, she could do household tasks like caring for her dog, cleaning, gardening, preparing salads, baking, washing laundry, and vacuuming.  AR 311-12, 314.  She could go out independently, drive a car, shop 3-4 times per week, play video games, and hike.  AR 313-14; AR 425 ("hiking for exercise 4-5 x week" in June 2019).  She could pay attention "usually as long as I need," follow written instructions "well," handles stress "well," get along with authority figures "well," and walk 1-2 miles.  AR 315-16.

Dr. Scott initially reviewed of the available medical evidence in July 2020.  AR 71.  For purposes of Plaintiff's DIB application, Dr. Scott found that she had not established the existence of a severe, physical MDI before her LDI.  AR 56.  For her SSI application, Dr. Scott considered Plaintiff's condition in and after June 2020 and opined that Plaintiff could perform light work with some additional physical limitations.  AR 70-71.

Plaintiff alleged that her migraines worsened after Dr. Scott's opinion.  AR 84.  On reconsideration in December 2020, Dr. Berry also found that Plaintiff had not demonstrated a severe, physical MDI prior to her LDI.  AR 87.  For the SSI claim, Dr. Berry assessed essentially the same RFC as Dr. Scott.  AR 92-93.

Plaintiff cited the following records as establishing the functional limitations

associated with her migraines (PB at 3-6), summarized with context in roughly chronological order below:

| | |
|---|---|
| AR 375, 379, 390, 394 | Plaintiff saw Richard Han, M.D., at Friends Medical Group in December 2014.  She complained of cold symptoms with nausea, "mild abdominal pain," and "headache noted."  AR 396.  Dr. Han administered a Z-pack.  AR 396.<br><br>She returned in January 2015 with a persistent cough.  She reported taking "Maxalt for headaches."  AR 394.  Dr. Han added propranolol for migraines.  AR 394.  In February 2015, Plaintiff was "improved with headaches."  Dr. Han wrote "migraines HA stable with meds" and "nausea improved."  AR 392.<br><br>In March 2015, she reported "resolution of headache since on her pills."  AR 390.  Her next appointment with Dr. Han was not until August 2015, and the progress notes do not discuss headaches.  AR 387-89.  Similarly, she did not complain of headache pain in October, November, or December 2015.  AR 381, 383, 385.<br><br>In February 2016, Plaintiff reported "migraine headaches improved but still present."  Dr. Han "restarted" her "on propranolol."  AR 379.  Her next appointment about nine months later in November 2016 mentions "migraine headaches" with no current symptoms or change in treatment.  AR 377.<br><br>In January 2017, she reported "some headaches at times."  Dr. Han to noted, "hx [history] of migraines."  AR 375. |
| AR 1603 | In 2017-2020, Plaintiff received primary care from Planned Parenthood ("PP").  In September 2017, Plaintiff denied headaches.  AR 1605.  In November 2017, she reported having "migraines with aura more often" and a cyst in her brain.  She was "taking ibuprofen with some relief."  AR 1601.  PP ordered an MRI to evaluate the brain cyst.  AR 1603. |
| AR 1299 | In February 2018, Plaintiff had a neurologic consultation with Martin J. Blackman, M.D.  She reported a "history of pressure type headaches associated with nausea."  Dr. Blackman reviewed the recent brain MRI, noting the cyst.  AR 1298.  He assessed, "Migraine without aura, not intractable without status."  He also wrote, "The patient's headaches are not frequent enough to require preventative measures."  AR 1299. |

| | |
|---|---|
| AR 426 | In October 2018, Plaintiff had gastric sleeve surgery. AR 422. At follow-up appointments in March, June, and August 2019, she did not mention headache pain to her doctors. AR 422-30. |
| AR 1462, 1472 | In November 2019, Plaintiff told PP that she was "seeing neurologist for migraine management" and "on multiple medications." AR 1469. PP advised, "If she would like to change nausea medication she should discuss with neurologist." AR 1472. In December 2019, she did a "primary care medication review" with PP. AR 1460. PP again noted that she was taking medications managed by a neurologist for migraine headache with aura. AR 1462. |
| AR 808 | In March 2020, Plaintiff reported that she was "on no medications for migraines." AR 750. A PP examination on March 31, 2020, says nothing about current headache symptoms. AR 814. On April 8, 2020, she again told PP that a neurologist was treating her "migraine with aura" with multiple medications. AR 806, 808. On April 16, 2020, she reported "uncontrolled migraine headaches … 17 headaches per month. Relieved with medications prescribed by Neuro but in process of working up why migraines are happening." AR 803. In June 2020, she denied headache. AR 785, 788.<br><br>Meanwhile, in February 2020, she attended physical therapy ("PT") to address left shoulder and arm pain after falling while playing with a dog. AR 799. The PT records do not mention headaches. AR 740. Between January and May 2020, she did PT to address urinary symptoms. AR 735, 755. She reported a history of migraines. AR 758. In December 2019, Plaintiff reported to Diabetes Associates Medical Group that she had "a history of migraine headaches but …in the last 1 month she has had daily headaches." AR 765. At a later appointment on April 1, 2020, to address an ingrown toenail, Plaintiff did not report any pain other than toe pain. AR 747-48. |
| AR 1332, 1333 | These are records from two 2020 visits with Usma Nasim, M.D. On July 8, 2020, Plaintiff reported that her "headache frequency/intensity is about the same." Dr. Nasim's plan was to refill medications as needed and follow up in 3-4 months. AR 1333.<br><br>On October 27, 2020, Plaintiff again reported that her "headache frequency/intensity is about the same." AR 1332. Dr. Nasim's plan was to "wean off [tramadol] gradually" and "try Maxalt." |
| AR 1377, 1400 | In July 2020, Plaintiff asked PP for "advice for disability paperwork due to migraine, fibromyalgia, and depression and anxiety." She |

| | |
|---|---|
| | complained of headache, and PP noted that she "has routine f/u with neurologist who manages her headaches …." AR 1398. PP suggested getting recommendations from her specialists about applying for disability. AR 1400.<br><br>In October 2020, Plaintiff complained to PP of rib pain. AR 1376. PP noted that migraines were "managed by neuro." AR 1377. |
| AR 1666, 1667 | Plaintiff visited Dr. Nasim in January 2021. She reported, "Headache frequency/intensity is about the same. About 3 times/week." AR 1669.<br><br>In April 2021, she complained of "almost daily" headache and "Botox [administered in February] did not help." Dr. Nasim continued to prescribe tramadol and provided samples of Ajovy with follow up in 1-2 months. AR 1667.<br><br>In July 2021, Plaintiff reported "migraine are better with Ajovy." Dr. Nasim prescribed this drug and instructed Plaintiff to follow up in 3-4 months. AR 1666. |

### 2. Relevant Administrative Proceedings.

The ALJ found that Plaintiff's migraines were a severe MDI. AR 18. The ALJ first considered the medical evidence pre-dating Plaintiff's LDI. The ALJ concluded that the 2015 evidence (from Dr. Han summarized above) did not show that Plaintiff's migraines caused greater functional limitations than those assessed in the RFC. AR 21.

Next, the ALJ considered Plaintiff's later treating records. After summarizing the medical evidence, the ALJ wrote as follows:

> The claimant's longitudinal treatment record is inconsistent with the alleged severity of her medical conditions and asserted functional limitations. The available objective medical records do not convey a disabling pathology. Considering the claimant's longitudinal clinical presentation, frequency of treatment, type of and response to treatment, and objective signs and findings, greater limitations than as

7

found herein are not warranted.  AR 22.  Specific to migraines, the ALJ wrote, "It appears … migraine headaches are well managed with conservative means."  AR 22.

Plaintiff's counsel did not ask the VE what impact particular levels of absenteeism might have on her employability.  AR 44.  The ALJ ultimately found that Plaintiff could perform jobs classified as light, unskilled work.  AR 23.

### 3.   Analysis of Claimed Error.

First, Plaintiff argues that the evidence does not support the ALJ's conclusion that her headaches were "well managed" by medication.  (PB at 5.)  For Plaintiff's DIB claim (for which the relevant time is before her LDI of June 30, 2015), the only medical records show that after complaining of headaches to Dr. Han and receiving medication, her headaches "improved" and became "stable."  AR 392.  Dr. Han considered her headaches resolved by March 2015.  AR 390.  Her later appointment notes do not mention complaints of headache pain.  AR 381-85.

Looking at later records for Plaintiff's SSI claim, Plaintiff mentioned occasional headaches to her doctors in 2016 and 2017 (AR 675, 679, 1601), but in February 2018, neurologist Dr. Blackman assessed that her "headaches are not frequent enough to require preventative measures."  AR 1299.  Plaintiff cites no later 2018 or 2019 records from any treating neurologist.

In 2020 records, PP mainly notes that Plaintiff has a history of migraines for which she received treatment from a neurologist.  AR 803, 806, 808.  The records of that neurologist, Dr. Nasim, show that Plaintiff either reported no significant changes in her symptoms despite months between appointments with routine medication management (AR 1332-33, 1669) or a spike in symptoms followed by improvement upon taking a new medication (AR 1666-67).

The ALJ did not err in concluding that these medical records show that Plaintiff's headache symptoms were sufficiently well managed to not cause a level

of distraction or absenteeism that would prevent fulltime work.

Next, Plaintiff argues that the ALJ should have included additional limitations in her RFC, such as an allowance for some level of absenteeism or time spent off-task, or explained why no such limitations were required. (PB at 5.) But the ALJ did explain his reasoning; the ALJ found that Plaintiff's headache pain, when reported to doctors and treated with medication, improved enough not to cause disabling limitations. This is consistent with the records summarized above and the opinions of Drs. Scott and Berry who both opined that Plaintiff could sustain fulltime light work. AR 71, 87.

Plaintiff also argues that upon finding migraines a severe MDI, the ALJ was required to accommodate them somehow in the RFC. (PRB at 1-2.) But again, the ALJ found that Plaintiff's migraine pain did not limit her functionality to the degree she alleged. The ALJ could reasonably interpret the medical evidence to mean that if Plaintiff consistently followed the recommended treatment, her migraine pain would not regularly cause her to need unscheduled breaks or extra days off work.

For all these reasons, the ALJ's RFC findings have substantial evidentiary support.

**B.     ISSUE TWO: The ALJ's Consideration of Lay Testimony.**

    **1.     Relevant Administrative Proceedings.**

The ALJ discussed Plaintiff's Adult Function Report (AR 310-17) but did not discuss the Third-Party Function Report completed by Mr. Harris (AR 302-09). AR 30. The ALJ, however, said twice that his decision was based on "careful consideration of the entire record." AR 17, 19. The ALJ also said that he found the State agency consultants' opinions persuasive. AR 22. Those opinions stated repeatedly, "3rd pty [function report]– filled out by her boyfriend, consistent w/ 1st [party function report]." See, e.g., AR 51, 53, 64.

### 2. Summary of the Parties' Arguments.

Plaintiff makes two argues. First, Plaintiff contends that it was legal error for the ALJ to fail to provide a "germane" reason for rejecting Mr. Harris's Function Report. (PB at 7.) Second, Plaintiff contends that the ALJ was required to at least mention Mr. Harris's Function Report to show that he considered it. (PB at 6-8.) Plaintiff further contends that the ALJ's error was not harmless because Mr. Harris's "statements and observations support far greater limitations than are found in the ALJ's RFC determination," such as mental limitations so extreme that they would prevent Plaintiff from doing even simple work. (PB at 8 (discussing extreme forgetfulness).)

Defendant argues that the old rules requiring ALJs to articulate a "germane" reason were superseded by new regulations. (CB at 6.) But even under the old rules, any error was harmless because the ALJ's reasons for discounting Plaintiff's testimony would apply equally to Mr. Harris's Function Report. (CB at 7.)

### 3. Relevant Law.

Claims filed on or after March 27, 2017, are subject to the SSA's revised regulations for the evaluation of medical opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Under the new regulations, ALJs must "articulate how persuasive" they find "all of the medical opinions from each doctor or other source and explain" how they considered certain factors in reaching their findings. See Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022). Specifically, 20 C.F.R. § 404.1520c(a) says that ALJs "will articulate how we considered the medical opinions … in your claim according to paragraph (b) of this section." Paragraph (b) directs ALJs to state how persuasive each medical opinion is based on factors listed in paragraph (c). 20 C.F.R. § 404.1520c(b). Paragraph (c) lists several factors that ALJs must consider when evaluating medical source opinions. 20 C.F.R. § 404.1520c(c). The final paragraph then says that ALJs need

10

not articulate in their written decisions whether they found evidence from non-medical sources persuasive or why, as follows:

> (d) Evidence from nonmedical sources. We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.

20 C.F.R. § 404.1520c(d); see also 20 C.F.R. § 416.920c.

Per unpublished Ninth Circuit decisions, "It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although *it is clear they are no longer required to articulate it in their decisions*." Fryer v. Kijakazi, No. 21-36004, 2022 U.S. App. LEXIS 35651, at *7 n.1 (9th Cir. Dec. 27, 2022) (emphasis added).

**4. Analysis.**

While the parties disagree about the import of the new regulations, the Court need not resolve their disagreement. Even under the old regulations, any error would be harmless. The relevant question is not whether Mr. Harris described Plaintiff's abilities as more limited than the RFC. (PB at 8.) Rather, the relevant question is whether Mr. Harris described Plaintiff's abilities similarly to how Plaintiff described them. An ALJ's failure to provide reasons for rejecting lay testimony is harmless if it is "inconsequential to the ultimate nondisability determination." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)). This standard is met if the lay testimony can be rejected for the same reasons as the claimant's testimony. Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("[W]here the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not clearly link his determination to those reasons."); Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (because the ALJ gave valid reasons for rejecting the claimant's

subjective complaints and "because the wife's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony").

Here, the two Function Reports are worded substantially identically.[2] Compare AR 302-09 and AR 310-17. The ALJ discounted Plaintiff's testimony as inconsistent with the medical evidence and her activities. AR 18, 20. Plaintiff did not challenge the ALJ's reasons on appeal. These same reasons would apply equally to Mr. Harris's Function Report. Indeed, while Mr. Harris reported that Plaintiff had extreme difficulty with memory, being so forgetful that she would "lose her train of thought and forget what has been said" (PB at 6, citing AR 307), during her period of claimed disability, she was able to obtain a college degree and work in the trusted position of a home health aide.

Plaintiff argues that the Court cannot engage in harmless error analysis if the ALJ did not explicitly say that he discounted Mr. Harris's Function Report for the same reasons as Plaintiff's. (PRB at 4.) This argument conflicts with the above-cited Ninth Circuit authority. See Molina, 674 F.3d at 1121 ("A reviewing court's refusal to consider whether the ALJ's reasoning applies to undiscussed lay witness testimony is contrary not only to our case law holding that errors are harmless if they are inconsequential to the ultimate nondisability determination, but also to the long-settled rule that we will not set aside the denial of a disability claim unless the Secretary's findings are not supported by substantial evidence *in the record as a whole*.") (citations omitted).

---

[2] When asked what activities she enjoys with others, Plaintiff wrote, "Watch movie. Talk. Video games, kites." AR 314. The Court initially understood "kites" to refer to a kind of video game or gaming strategy. See https://en-academic.com/dic.nsf/enwiki/730703 (defining kiting). But Mr. Harris said that Plaintiff enjoys "flying kites." AR 306.

12

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: July 25, 2023

                                       /s/ Karen E. Scott
                                       KAREN E. SCOTT
                                       United States Magistrate Judge